UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TERRENCE MATTHEWS, | Case No. 3:09-cv-00462-CWD |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| KIM JONES, Warden, | |
| Respondent. | |

Pending before the Court is Respondent's Motion for Summary Dismissal. (Dkt. 34.) The Motion is now fully briefed, with a Response, Reply, and Sur-reply. (Dkt. 38, 39, 40.) Both parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 6, 11.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Having fully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument.

**MEMORANDUM DECISION AND ORDER - 1**

Therefore, the Court will decide this matter on the written motions, briefs and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

## BACKGROUND

Petitioner Terrence Matthews is proceeding on his Second Amended Petition. (Dkt. 26.) This Petition concerns only parole issues, rather than conviction and sentencing issues, which were addressed by the Court in a prior proceeding, not relevant here. For clarification purposes, however, the Court briefly reviews the entire history of Petitioner's state and federal court proceedings.

**1.     Trial, Direct Appeal, and Post-Conviction re: Convictions and Sentences**

Petitioner was convicted of two counts of lewd conduct with a minor and two counts of sexual abuse of a minor after a jury trial in the Third Judicial District Court in Gem County, Idaho. (State's Lodging A-1, p.40.) He was sentenced to four concurrent sentences of five years fixed, followed by ten years indeterminate. (*Id*., pp. 40-41.)

Petitioner filed a direct appeal challenging his convictions and sentences, which was heard by the Idaho Court of Appeals. *State v. Matthews*, 864 P.2d 644 (Idaho Ct. App. 1993). Petitioner next filed an application for post-conviction relief, which was denied by the state district court. On appeal, the Idaho Court of Appeals affirmed the denial of the post-conviction application. *Matthews v. State*, 936 P.2d 682 (Idaho Ct. App. 1997).

**MEMORANDUM DECISION AND ORDER - 2**

**2.      Prior Federal Habeas Corpus Petition**

Petitioner filed a federal habeas corpus petition challenging his convictions, which was dismissed without prejudice for failure to exhaust state court remedies. Case No. 3:5-cv-00237-EJL, *Matthews v. Hope*. Dismissal of that case was affirmed by *Matthews v. Hope*, 152 F.3d 927, 1998 WL 382758 (9th Cir. 1998) (unpublished).

Another federal habeas corpus petition, Case No. 1:07-cv-00253-BLW, *Matthews v. Spaulding*, was dismissed with prejudice on March 17, 2000, and a certificate of appealability was denied. Petitioner filed a third federal habeas corpus petition, Case No. 1:00-cv-00123-EJL, *Matthews v. Spaulding*, on March 7, 2000, which was dismissed for failure to obtain authorization from the United States Court of Appeals for the Ninth Circuit. When Petitioner sought authorization, it was denied.

**3.      Parole Violations and Revocations**

Petitioner was first released on parole in October 1996, and completed approximately five years on parole, but his parole was revoked in February 2002, as a result of violations. (State's Lodging A-1, p.122.) Petitioner was placed on parole again in May 2002, with specific parole restrictions and conditions. (State's Lodging A-1, pp. 43-46.)

Petitioner believed that his parole was progressing well, but, after three years, in July 2005, he was assigned a new parole officer, Chris Colson, who required Petitioner to

take a polygraph examination on August 1, 2005. Four days later, on August 4, 2005, Colson issued a parole violation report, with recommendations that parole be revoked, that time spent on parole be forfeited, and that Petitioner be returned to prison to serve the duration of his sentence. (State's Lodging A-1, pp. 59-65.) The list of parole violations included the following: (1) failing to submit monthly reports; (2) failing to follow the instructions of his parole officer; (3) leaving his assigned district without written permission; (4) failing to remain alcohol and drug free; (5) frequenting establishments where alcohol is the main source of income; (6) failing to obtain a substance abuse evaluation; (7) failing to comply with sex offender treatment; and (8) associating with minor children without approved supervision. (*Id*.)

A preliminary hearing before Parole Officer Andy Martin was held on August 16, 2005, after twice being continued at Petitioner's request, with Petitioner represented by attorney Bob Pangburn. (State's Lodging A-1, p.80-83.) At the conclusion of the hearing, the hearing officer issued a preliminary hearing report finding probable cause as to all of the allegations. (*Id*.)

Petitioner had an evidentiary parole violation hearing before Hearing Officer Juanita Hutchison, on October 21, 2005, after being continued twice on Petitioner's request, just as with the prior hearing. (State's Lodging A-1, p.92, *et seq*.) Petitioner was represented by counsel at the hearing and had an opportunity to cross-examine several

witnesses, including two ex-girlfriends, Judy Walsberg and Barbara Stott, who testified about facts supporting numerous violations. (*Id.*) The hearing officer did not issue a decision within the 20-day time period provided by Idaho Code § 20-229B.

Rather, several months later, on January 3, 2006, the hearing officer issued a written decision, finding that Petitioner had committed violations for charges (1) through (5) and (7) through (8) because he had unauthorized contact with minor children, frequented places where minors congregate, used the Internet without permission, failed to inform an employer of his criminal convictions, left the state and the supervising district without permission, went to places where alcohol was served, failed to comply with sex offender treatment, changed residences without permission, and failed to submit monthly reports to his parole officer. (*Id.*)

Petitioner was found innocent of charge (6), failing to obtain a substance abuse evaluation. (*Id.*) Based on the violations, the hearing officer recommended to the Idaho Commission of Pardons and Parole that parole be revoked. Petitioner received a copy of the hearing officer's decision on January 25, 2006. (*Id.*)

A final disposition hearing commenced March 15, 2006, but could not be completed until April 13, 2006, because Petitioner "became hysterical and could not control his emotions." (State's Lodging A-1, pp. 124-26.) Petitioner was represented by attorney Anita Warrant at the first disposition hearing, and Bob Pangburn at the second.

**MEMORANDUM DECISION AND ORDER - 5**

Two of the same adverse witnesses, ex-girlfriends Judy Walsberg and Barbara Stott, who testified at the evidentiary parole violation hearing of October 21, 2005, testified at both final parole hearings, but Petitioner was not permitted to cross-examine them at the second hearing. At the conclusion of the hearing, the Parole Commission elected to adopt the hearing officer's findings from the parole violation hearing; revoke Matthews' parole; pass him to his full-term release date; grant him credit for parole from May 9, 2002, through July 6, 2002, for the time he had been incarcerated awaiting the parole hearing (59 days); and forfeit his remaining time on parole from July 7, 2002, through July 29, 2006 (1,118 days). (State's Lodging A-1, pp. 128-36.)[1] The Parole Commission specifically stated that it did not rely on testimony given at the second hearing in deciding to revoke parole, but relied solely on Hearing Officer Juanita Hutchison's findings. ((State's Lodging C-7, p. 2.)

After revocation, Petitioner filed numerous administrative appeals, self-initiated progress reports (SIPR), and civil actions, all challenging his parole violations and revocation.

**4.      First State Habeas Corpus Action Challenging Parole Revocation**

On October 30, 2006, Petitioner filed a pro se state habeas corpus petition challenging the Parole Commission's decision to revoke his parole and require forfeiture

---

[1] According to the IDOC website, Petitioner is slated to complete his sentence on September 9, 2013. See https://www.accessidaho.org/public/corr/offender/search.html.

of his parole time. (State's Lodging A-1, pp. 1-30.) The State responded and requested summary judgment. With the assistance of a new attorney, Robert Van Idour, Petitioner responded to the state's motion for summary judgment. Magistrate Judge Randall Robinson granted the State's motion and dismissed the petition. (*Id.*, pp. 173-97.)

Petitioner appealed the magistrate judge's decision to the state district court, raising only three issues: "(1) Did the Magistrate commit error in finding that sufficient evidence existed to support the findings of fact of the Department of Corrections in this case?; (2) Did the Magistrate properly apply the standards for summary judgment in this case?; and (3) Did the procedures used by the Department of Corrections in this case violate the Appellant's rights to due process of law?" (State's Lodging A-1, pp. 200-09.) After reviewing the parties briefing, Idaho District Judge John Bradbury disagreed with Petitioner' position that he was entitled to an evidentiary hearing to demonstrate that the Parole Commission abused its discretion, and Judge Bradbury affirmed Magistrate Judge Robinson's dismissal of the habeas corpus petition. (*Id.*, pp. 225-31.)

Petitioner filed an appeal challenging the district court's decision, which was assigned to the Idaho Court of Appeals. (State's Lodging A-1, pp. 232-36.) On appeal, Petitioner raised the following issues in his pro se opening brief: "(1) Did the courts avoid addressing Petitioner's allegations on his Writ of Habeas Corpus in arguing the violations?; (2) Did the courts avoid petitioner's allegations that the petitioner was already

**MEMORANDUM DECISION AND ORDER - 7**

being punished and sanctioned for every violation in the parole officers' report?; (3) Was

petitioner denied due process when one of the very few statutes that the commission

'shall' do, fail to give a decision within 20 days and lie about it?; (4) Was the petitioner

denied due process and his constitutional rights to confrontation and cross-examination

under the 8th and 14th Amendments, at his revocation hearing dated April 15, 2006?

(Including cross-examination issues at all stages of his revocation process); (5) Was the

commission denying petitioner due process, double jeopardy in extending his sentence by

the judge to not exceed 15 years; September 9th, 2006, where no new crimes, absconding,

accusations, even dirty UA nor even a misdemeanor?); (6) Should the commission record

all hearings so petitioner can correctly address issues, instead of trying to remember what

testimony was given? (Rule 5(c)); (7) Was petitioner denied 6th amendment right of

effective assistance of counsel, when his attorney refused to communicate with petitioner,

send him briefs requested, especially when counsel doesn't contact the petitioner until

March 5th, 2008, the day before the petitioner's tolling, and still not get the requested

briefs filed?; (8) Was the petitioner entitled to an evidentiary hearing?; and (9) Did the

magistrate violate federal habeas corpus rules in disposing of the Writ of Habeas Corpus?"

(State's Lodging B-1, p.12.)

**MEMORANDUM DECISION AND ORDER - 8**

The Idaho Court of Appeals refused to address issues that were not raised before the magistrate or state district court, observing that it would "address only those issues now presented by Petitioner that were properly preserved in the proceedings below." (State's Lodging B-4, p.4.) Therefore, the only issues addressed by the Idaho Court of Appeals in affirming the state district court's decision were the following: (1) whether the magistrate judge erred by not having an evidentiary hearing; (2) whether the hearing officer violated I.C. § 20-229B by not issuing her decision within twenty days after completion of the parole violation hearing on October 21, 2005; and (3) whether Petitioner's due process right to cross-examine adverse witnesses was violated during the parole revocation hearing completed on April 13, 2006. (*Id.*, pp. 4-10.) Petitioner's petition for review before the Idaho Supreme Court was denied. (State's Lodgings B-6 to B-9.)

## 5.    Second State Habeas Corpus Petition

On December 13, 2007, while his first state habeas petition was on appeal, Petitioner filed a second state habeas petition, entitled an "Amended Petition for Writ of Habeas Corpus," arising from the same parole violation/revocation proceedings underlying his first petition; he also newly challenged the Commission's denial of self-initiated progress reports requesting that he be placed on parole. (State's Lodging C-1, pp. 4-51.)

The State responded, requesting summary judgment, arguing that the claims repeated from Petitioner's first habeas petition were barred by the doctrine of res judicata and that the claims involving his self-initiated progress reports failed to state a claim upon which relief could be granted. (*Id.*, pp. 61-68.) Magistrate Judge Randall Robinson granted the motion for summary judgment and denied the petition for habeas corpus. (*Id.*, pp. 110-17.)

Petitioner appealed Magistrate Judge Robinson's decision to District Court Judge John Bradbury. (State's Lodging C-1, pp. 118-22.) On August 28, 2008, Judge Bradbury affirmed Magistrate Judge Robinson's decision that Petitioner had received due process regarding the self-initiated progress reports, but remanded the petition on Judge Robinson's decision on the doctrine of res judicata, requiring Judge Robinson to address the merits of the claims associated with the original parole revocation proceedings. (*Id.*, pp. 125-35.)

Petitioner filed a motion to reconsider Judge Bradbury's decision of August 28, 2008. The motion was denied on September 22, 2008. (*Id.*, pp. 136-37.) Respondents also filed a motion to reconsider, which Judge Bradbury denied on October 3, 2008. (*Id.*, pp. 138-52.)

On October 31, 2008, Petitioner filed a partial notice of appeal with the Idaho Supreme Court, challenging that portion of Judge Bradbury's September 22, 2008 decision

**MEMORANDUM DECISION AND ORDER - 10**

regarding self-initiated progress reports. (State's Lodging C-1, pp.154-58.) Counsel Sarah Thomas was appointed, who filed a motion for leave to withdraw and suspend the briefing schedule, on the grounds that appellate counsel could find no viable issue for appeal. (State's Lodging D-2.) Petitioner filed an opening brief pro se (State's Lodging D-6), and then moved to have his appeal dismissed (State's Lodging D-8.) The Idaho Supreme Court granted the motion and dismissed the case. (State's Lodging D-9.)

On May 15, 2009, pursuant to the order of remand, Magistrate Judge Robinson again concluded the parole revocation claims were barred by the doctrine of res judicata, but also dismissed the claims on the merits, concluding that the petition was frivolous. (State's Lodging C-3.) Petitioner filed an appeal to the district court (State's Lodging C-4), and, on June 1, 2010, Judge Bradbury affirmed Magistrate Judge Robinson's dismissal of his remaining claims. (State's Lodging C-7.) Petitioner filed a motion for reconsideration (State's Lodging C-8), but on February 2, 2011, he withdrew the motion. (State's Lodging C-9.) Petitioner did not appeal the district court's decision affirming dismissal of his claims. (*See* State's Lodging C-10, State Court Register of Action.)

## 6.    State Mandamus Proceedings

During the pendency of his second state habeas petition, Petitioner filed a petition for writ of mandamus directly with the Idaho Supreme Court, asking that court to intervene in the manner in which the state district and magistrate courts were handling his

habeas corpus matters. (State's Lodging E- 1.) The petition was denied without comment

by the Idaho Supreme Court on August 28, 2009. (State's Lodging E-2.)

**7.      Current Federal Habeas Corpus Proceedings**

On September 14, 2009, Petitioner filed his federal Petition for Writ of Habeas

Corpus, challenging the parole violation/revocation proceedings. (Dkt. 3.) Because

Petitioner's related state court proceedings were still pending, the Court stayed this action.

(Dkt. 21.)

On May 13, 2011, the stay was lifted (Dkt. 25), and Petitioner was permitted to

proceed on his Second Amended Petition for Writ of Habeas Corpus (Dkt. 26), which

contains the following claims: "(1) The double jeopardy clause protects against multiple

punishments for the same offense. 8th Amendment. Petitioner' civil rights were violated in

that he was already being sanctioned for all violations in the Parole Officer's Report of

Violations; (2) due process 14th Amendment that decision of guilt be made within 20 days

then to lie and say decision made at hearing [s*ee* I.C. § 20-229B]; (3) Due process right to

confront evidence or address testimony against you and cross-examine witness [sic] under

8th and 14th Amendments; (4) due process to record proceeding for accuracy; and (5)

Ineffective assistance of counsel. If counsel hired by petitioner would have correctly

argued these issues and contacted or accepted a phone call for the $5000 paid the issues

presented would not had to go into US District Court." (Dkt. 26, pp. 4-5.)

**MEMORANDUM DECISION AND ORDER - 12**

Currently at issue is Respondent's Motion for Summary Dismissal, asserting that all of Petitioner's claims are procedurally defaulted. (Dkt. 34.)

## STANDARD OF LAW FOR MOTION FOR SUMMARY DISMISSAL BASED UPON PROCEDURAL DEFAULT

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." In such case, the Court construes the facts in a light most favorable to the petitioner. It is appropriate for the Court to take judicial notice of court dockets from state court proceedings. Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court may deny the claim on its merits, but it cannot otherwise grant relief on unexhausted claims. 28 U.S.C. § 2254(b). The petitioner can satisfy the exhaustion requirement by showing that (1) he has "fairly presented" his federal claim to the highest state court with jurisdiction to consider it, or (2) that he did not present the claim to the

**MEMORANDUM DECISION AND ORDER - 13**

highest state court, but no state court remedy is available when he arrives in federal court (improper exhaustion). *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted).

State remedies are considered technically exhausted, but not *properly* exhausted, if a petitioner failed to pursue a federal claim in state court and there are no remedies now available. *O'Sullivan*, 526 U.S. at 848. A claim may also be considered exhausted, though not properly exhausted, if a petitioner pursued a federal claim in state court, but the state court rejected the claim on an independent and adequate state law procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 731-732 (1991). Under these circumstances, the claim is considered to have been "procedurally defaulted." *Coleman,* 501 U.S. at 731.

"[T]o constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.'" *Martinez v. Klauser,* 266 F.3d 1091, 1093-94 (9th Cir. 2001) (internal citation omitted). Particularly, where there is "an absence of prior authority supporting the [state court's] decision" and the decision appears "contrary to [state] law," such a state court decision does *not* rest on a "clear, consistently applied, and well-established" state procedural rule, and the procedural default may *not* be applied to bar consideration of the merits of a petitioner's claim in a federal habeas corpus action. *Id*. The procedural bar is also independent of federal law if there is no indication in the

**MEMORANDUM DECISION AND ORDER - 14**

record that the state court considered any federal issue in determining the issue. *See Zichko v. Idaho*, 247 F.3d 1015, 1021 (9th Cir. 2001).

A procedurally defaulted claim will not be heard in federal court unless the petitioner shows either that there was legitimate cause for the default and that prejudice resulted from the default, or, alternatively, that the petitioner is actually innocent and a miscarriage of justice would occur if the federal claim is not heard. *Id.*

## DISCUSSION

**1.      Procedural Default**

The Court will first review whether, in Petitioner's first state habeas corpus appeal, Claims 1, 4, and 5 were properly presented to the Idaho Supreme Court, and then whether Claims 2 and 3 were properly presented. The Court will next determine whether any of the claims were properly exhausted in Petitioner's second state habeas corpus appeal.

### A.      *First State Habeas Corpus Appeal*

In the federal Petition, Claim 1 is that Petitioner was punished multiple times for the same offense, in violation of the Double Jeopardy Clause of the Eighth Amendment. Claim 4 is that Petitioner's due process rights were violated because the parole hearings were not recorded. Claim 5 is that Petitioner's counsel performed ineffectively during the state proceedings.

**MEMORANDUM DECISION AND ORDER - 15**

Claims 1, 4, and 5 were not raised at both the magistrate level and district court level in the first state habeas corpus action. Rather, these were among several new claims Petitioner raised in his appellate brief before the Idaho Court of Appeals. Because the claims "were not raised before the magistrate court" or "presented on the intermediate appeal to the district court," the Court of Appeals refused to hear the additional claims. (State's Lodging B-4, p.4.) The Idaho Court of Appeals cited to state case law holding that the state appellate courts will not consider issues that were not presented to the trial court, including *State v. Fodge*, 824 P.2d 123, 126 (1992); *State v. Jones*, 115 P.3d 764, 767 (Ct. App. 2005). The Court of Appeals also cited cases holding that, where an intermediate appeal has occurred, only issues raised in that intermediate appeal may be brought forward to a higher appellate court, including *Barmore v. Perrone*, 179 P.3d 303, 307 (2008); *Stonecipher v. Stonecipher*, 963 P.2d 1168, 1174 (1998); *Harris v. Carter*, 189 P.3d 484, 486 (Ct. App. 2008); and *State v. Bailey*, 792 P.2d 966, 968 (Ct. App. 1990). (State's Lodging B-4, p.4.)

Respondent argues that the requirement that each claim be raised in each lower/intermediate court to be considered properly raised at the next level of appeal is a regularly- and consistently-applied procedural bar. *See Sanchez v. Arave*, 815 P.2d 1061, 1062 (Idaho 1991) ("The longstanding rule of this Court is that we will not consider issues that are presented for the first time on appeal."); *Hoppe v. McDonald*, 644 P.2d 355, 357

(Idaho 1982) ("A litigant may not remain silent as to claimed error during a trial and later urge his objections thereto for the first time on appeal."); *Craven v. Doe*, 915 P.2d 720, 723 (Idaho 1996) ("an issue not raised in an intermediate appeal will not be decided by a higher court."); *Centers v. Yehezkely*, 706 P.2d 105, 106 (Idaho Ct. App. 1985) ("It is well settled that when a second appeal is taken, the appellants may not raise issues in the higher court different from those presented in the intermediate court.").

The Court agrees that the procedural bars are adequate in this case, and there is no question that the rule governing state appellate procedures is independent of federal law. Because Claims 1, 4, and 5 were not raised before both the magistrate and district court, and thus not addressed on the merits by the Idaho Court of Appeals, they are procedurally defaulted and must be summarily dismissed.

Respondent argues that Petitioner did not present Claim 2 (failure to render opinion within twenty days) and Claim 3 (failure to allow cross-examination) in his petition for review before the Idaho Supreme Court. The United States Supreme Court has opined that, "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). In *Baldwin*, the Court set forth minimum standards for a petitioner to raise a federal claim in his state court briefing:

**MEMORANDUM DECISION AND ORDER - 17**

"A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id*.

Turning to Claims 2 and 3, the Court finds that both were raised in Petitioner's opening appellate brief in the first state habeas corpus petition. (State's Lodging B-1, pp. 13, 19.) Claim 2 was raised as a "due process" claim, and Respondent treated it as a federal due process issue under *Morrissey v. Brewer*, 408 U.S. 471 (1972); Claim 3 was raised under the Eighth and Fourteenth Amendments. The Idaho Court of Appeals addressed the merits of both claims.(State's Lodging B-4, pp. 4-10.)

Respondent argues that, at the next stage of proceedings–the petition for review before the Idaho Supreme Court–Petitioner made only one argument: that the Idaho Court of Appeals erred when it concluded that he had not properly presented other claims before the magistrate court or the district court. Hence, Respondent argues, Claims 2 and 3 are procedurally defaulted.

In the brief in support of the petition for review, Petitioner asked the Idaho Supreme Court to review "the lower court decision in his habeas corpus proceedings, given the following reasons. . . . " (State's Lodging B-6, p. 6-1.) The body of the brief described how some of the claims were handled by counsel and the courts below. (*Id*.,pp.

**MEMORANDUM DECISION AND ORDER - 18**

1-5.) Petitioner mentioned that his attorney did not argue that the Parole Commission failed to make a decision within twenty days of the hearing, and that the Parole Commission did not give him an opportunity to cross-examine adverse witnesses, but Petitioner did not cite a constitutional provision, mention the words "due process," or state he wished to assert a "federal" claim as to these two allegations. Rather, he cited "IDAPA Rule 50.01.400.3(b)" in discussing the cross-examination issue.

Attached to the petition for review was a copy of Idaho Administrative Code § 50.01.01, which outlined the rules governing the Idaho Parole Commission. Within that code section, "due process" procedures are specified. (State's Lodging B-6.) Also attached to the petition for review was a copy of Petitioner's petition for writ of habeas corpus, which designated Claims 2 and 3 as "due process" claims, and which requested, as relief, that the court "enter judgment declaring the acts of the Commission of Pardons and Parole violated the rights of the petitioner, under the Eighth and Fourteenth Amendments of the United States Constitution." (*Id.*)

For federal exhaustion purposes, appellants are allowed to incorporate by reference issues presented in an appendix but not argued in the appellate brief, if that is allowed by state law. *See Insyxiengmay v. Morgan*, 403 F.3d 657 (9th Cir.2005); *accord, Scott v. Schriro*, 567 F.3d 573 (9th Cir. 2009). However, the law is clear that a petitioner must bring his federal claim before the state court by "explicitly" citing the federal legal basis

for his claim. *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), *as amended*, 247
F.3d 904 (9th Cir. 2001). Federal habeas corpus exhaustion principles make it clear that
the mere similarity between a state law claim and a federal law claim does not constitute
fair presentation of the federal claim. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995).
General references in state court to broad constitutional principles, such as due process,
equal protection, and the right to a fair trial, are insufficient to exhaust a similar federal
claim. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).

Construing the petition for review liberally because of Petitioner' s pro se status,
the Court concludes that Petitioner's reference to the United States Constitution in his
exhibit attached to the petition for review was sufficient to alert the Idaho Supreme Court
that he was seeking review of Claims 2 and 3 as federal claims.[2] Accordingly, these claims
are not procedurally defaulted and will be heard on the merits, based upon the last
reasoned state court decision, which was the Court of Appeals's decision.

**B.      *Second State Habeas Corpus Appeal***

Petitioner argues that, regardless of the first state habeas corpus proceeding, he
presented all of his claims to the Idaho Supreme Court in his second state habeas corpus
action ("Amended Petition for Writ of Habeas Corpus"). In that action, Petitioner filed an

---

[2] Idaho Appellate Rule 118, governing petitions for review, specifies that a brief must be
filed with the petition, but the Rule does not prohibit appendices or exhibits.

appeal challenging only that portion of the district court's decision regarding self-initiated progress reports (State's Lodging C-1, pp. 154-58), and he later requested that his appeal be dismissed. (State's Lodgings D-8, D-9.) Therefore, because the Idaho Supreme Court never had an opportunity to address any of the claims from the second state habeas petition, any claims contained therein are procedurally defaulted.

Because it is now too late for Petitioner to return to state court to present any of his claims in a procedurally proper manner, Claims 1, 4, and 5 are procedurally defaulted and are subject to summary dismissal absent a showing of cause and prejudice or a miscarriage of justice.

## 2.     Cause and Prejudice

### A.     *Standard of Law*

If a petitioner's claim is procedurally defaulted, the federal district court cannot hear the merits of the claim unless a petitioner meets one of two exceptions: a showing of adequate legal cause for the default and prejudice arising from the default; or, a showing of actual innocence, which means that a miscarriage of justice will occur if the claim is not heard in federal court. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to

comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

If a petitioner points to an instance of ineffective assistance of counsel during direct appeal that prevented the petitioner from properly exhausting his claims, he cannot rely on that instance unless he has first exhausted that particular ineffective assistance of counsel claim. If a petitioner has not exhausted any ineffective assistance of counsel claim, then he cannot rely on such a claim for "cause" in a "cause and prejudice" argument. *See Edwards v. Carpenter*, 529 U.S. 446 (2000) (ineffective assistance of counsel cannot serve as cause for the default of another claim unless the ineffective assistance of counsel claim is not itself procedurally defaulted or cause and prejudice for the default of the ineffective assistance claim can be shown).

A petitioner does not have a federal constitutional right to effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). As a result, the general rule is that any errors of Petitioner's counsel during the post-conviction action cannot serve as

**MEMORANDUM DECISION AND ORDER - 22**

a basis for cause to excuse Petitioner's procedural default of his claims. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991).

### B.      *Analysis*

Petitioner argues that the "cause" of the defaulted claims is that his attorney performed ineffectively in representing him in the state habeas corpus proceeding. However, the Sixth Amendment does not apply to parole revocation proceedings, because parole revocation is not a part of a criminal prosecution. *United States v. Spangle*, 626 F.3d 488, 494 (9th Cir. 2010). Because Petitioner had no constitutional right to counsel in the habeas corpus proceeding, any errors of his counsel cannot serve as cause for the default of his claims. *See Coleman v. Thompson*, 501 U.S. at 752.

### 3.      **Miscarriage of Justice**

### A.      *Standard of Law*

If a petitioner cannot show cause and prejudice, he can still bring the claim in a federal habeas petition if he demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). A miscarriage of justice means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To show a miscarriage of justice, Petitioner must make a colorable showing of factual innocence, *Herrera v. Collins*, 506 U.S. 390, 404 (1993); *Coley v. Gonzales*, 55

**MEMORANDUM DECISION AND ORDER - 23**

F.3d 1385, 1387 (9th Cir. 1995), supporting his allegations of constitutional error with new reliable evidence that was not presented at the hearing, *Schlup v. Delo*, 513 U.S. 298, 324 (1995). For example, types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996).

    **B.**    *Analysis*

Petitioner asserts that he is actually innocent of the parole violation charges. Assuming that the law provides for an actual innocence exception to parole violation charges, the Court concludes that Petitioner has failed to show that it applies here. To establish "actual innocence," Petitioner must come forward with new reliable evidence that was not presented to the Commission, such as trustworthy eyewitness accounts or exculpatory scientific evidence.

Even based upon the evidence presented at the hearing, Petitioner has not shown that he is actually innocent of each of the seven violation charges. While Petitioner has pointed out some flaws in the State's evidence, he has not considered that the finder of fact viewed the demeanor of the witnesses, made credibility assessments, and weighed the evidence.

**MEMORANDUM DECISION AND ORDER - 24**

On state habeas corpus review of the hearing officer's decision, the state magistrate court carefully went through the evidence presented at the hearings and determined that substantial evidence supported the Commission's findings of parole violations. (State's Exhibit A-1, pp. 173-197.)

For example, regarding the restriction against contact with minor children, which is a very important factor in supervision of sex offenders in the community, the state court noted:

> Petitioner . . . ignores the numerous serious incidents of contact cited in the decision. Petitioner had his fifteen year old son live with him for two months, allowed a woman and her young daughter to live with him for two weeks, allowed a young child to sit on his lap at a family gathering, had unapproved contact with his juvenile daughter on several occasions, interacted with children at family gatherings, attended a day care facility during normal operation hours when children were present and interacted with children while managing a secure housing complex. Morgan Aff. Ex. C at 6-8. Petitioner failed to get prior approval for any of these contacts. Nor did he timely report these contacts as required by his treatment protocol, even when directly asked.

(State's Lodging A-1, pp. 186-87.) This addresses just one of Petitioner's violations; he has not shown that he is innocent of this violation. Even if he had made such a showing, he must also show that he is innocent of the six other violations of which he was found culpable.

Petitioner's actual innocence argument fails because he does not have any new evidence that was not available at the time of his Parole Commission hearings. Petitioner's

**MEMORANDUM DECISION AND ORDER - 25**

arguments that his prior parole officer orally told Petitioner he did not have to follow all of the restrictions (notwithstanding the fact that the written parole agreement contained a term that any deviations from the restrictions must be authorized in writing), is an argument based on evidence available at the time of the hearings.

Based on all of the foregoing, the Court concludes that Petitioner has not met the *Schlup* standard for a showing of actual innocence that would excuse the default of his claims.

**DISCUSSION OF THE MERITS
OF PETITIONER'S CLAIMS**

The Court will now consider Claims 2 and 3 on the merits. In addition, even if procedural default is not applied to preclude a merits determination of Claims 1, 4, and 5, the Court concludes that none of Petitioner's claims warrants habeas corpus relief. Thus, the Court will also address these claims on the merits. *See Lambrix v. Singletary*, 520 U.S. 518 (1997) (federal courts are not required to address a procedural default issue before denying a petition on the merits); *see also Franklin v. Johnson*, 290 F.3d 1223 (9th Cir. 2002) ("appeals courts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar").

The Court will review those claims adjudicated by any of the state courts (Claims 1, 2, and 3) under AEDPA's deferential standard, *see* 28 U.S.C. § 2254, and those claims not adjudicated by the state courts (Claims 4 and 5) under a de novo standard. *See Killian v. Poole*, 282 F.3d 1204, 208 (9th Cir. 2002).

Under the Anti-terrorism and Effective Death Penalty Act (AEDPA), federal habeas corpus relief may be granted on claims adjudicated on the merits in a state court judgment only when the federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The "last reasoned" state court decision is the subject of AEDPA review. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).

Under § 2254(d), as amended by, federal habeas corpus relief is further limited to instances where the state-court adjudication of the merits:

1.   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

When a party contests the state court's legal conclusions, including application of the law to the facts, Section 2254(d)(1) governs. That section consists of two alternative

**MEMORANDUM DECISION AND ORDER - 27**

tests: the "contrary to" test and the "unreasonable application" test. Under the first test, for a decision to be "contrary to" clearly established federal law, a petitioner must show that the state court applied "a rule of law different from the governing law set forth in United States Supreme Court precedent, or that the state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from the Court's precedent." *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1), the petitioner must show that the state court was "unreasonable in applying the governing legal principle to the facts of the case." *Williams*, 529 U.S. at 413. A federal court cannot grant relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002).

## 1.      Claim 1

Petitioner's first claim is that his Eighth Amendment rights were violated when "he was already being sanctioned for all violations in the Parole Officer's Report of Violations." (Dk. 26, p. 4.)

**MEMORANDUM DECISION AND ORDER - 28**

The state magistrate court rejected this claim on the following grounds:

> Petitioner provides no authority for his assertion nor does his attorney provide any authority. Accepting Petitioner's argument, the State would be limited to considering limited discrete acts separate from other past acts. Violations of parole would have to be ignored once subject to sanction. Nothing in due process or the Eighth Amendment requires such hamstringing of the Parole Commission. Petitioner was specifically put on notice that violations can be used in future proceedings for more stepped up sanctions. Kubinski Aff., Ex. E. Petitioner's argument is without merit.

(State's Lodging A-1, p. 193.)

To prevail in a federal habeas corpus action, Petitioner must show that the state court's decision on this claim is contrary to, or an unreasonable application of, United States Supreme Court precedent. Petitioner has not provided United States Supreme Court case citations that show multiple "sanctions" for a parole violation amount to cruel and unusual punishment under the Eighth Amendment, and the Court finds no supporting case law in its own research.

The case law that does exist explains that, in every context, "cruel and unusual punishment" applies only to excessive and inhumane treatment. The United States Supreme Court has explained that the Eighth Amendment should be reserved for serious incidents causing "unnecessary and wanton infliction of pain." *Hope v. Pelzer*, 536 U.S. 730, 736-37 (2002) (internal citations and punctuation omitted). In the sentencing context, the United States Supreme Court has opined that, where a petitioner contests his sentence

**MEMORANDUM DECISION AND ORDER - 29**

as being grossly disproportionate to the crime, such a defense may be used "for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). Nothing in the record suggests that the various sanctions Petitioner suffered for multiple parole violations were in the range of "cruel and unusual punishment" under these Eighth Amendment standards.

Petitioner also contends in Claim 1 that the Parole Commission violated his right to be free from double jeopardy under the Fifth Amendment, his right to be free from cruel and unusual punishment under the Eighth Amendment, and his right to due process under the Fourteenth Amendment–all based on factual allegations that the Parole Commission "extended his judicially set 15 year sentence to 23 years" when it revoked parole and did not credit Petitioner's prison sentence with his parole time. (Dkt. A-1, p. 10.)

The state magistrate court rejected the Eighth Amendment argument, concluding that the time Petitioner will have spent in IDOC custody, approximately 22 years, "is not so 'out of proportion to the gravity of the offense committed and such as to shock the conscience of reasonable people.'" (State's Lodging A-1, p. 19, citation omitted.) The state magistrate court also rejected the Fifth Amendment argument, concluding that "the violation of the terms of parole is not a separate punishment for [a convicted felon's]

**MEMORANDUM DECISION AND ORDER - 30**

underlying criminal offenses"[;] [t]herefore, the double jeopardy clause is not violated."
(*Id.*, citation omitted.)[3]

Petitioner's Eighth and Fifth Amendment claims fail because there is no clearly-
established precedent supporting them. All lower courts that have addressed the issue of
probation or parole forfeiture have concluded that there is no Eighth Amendment
violation because the sentence is not "increased or extended," but "merely . . . interrupted
and deferred by the fact of [a] conditional release." *Woods v. Steiner*, 207 F. Supp. 945,
952 (D. Ma. 1962); *see also Weathers v. Willingham*, 356 F.2d 421 (10th Cir. 1966).

Similarly, forfeiture of time spent on parole or probation is not considered a
"multiple punishment" under the Fifth Amendment Double Jeopardy Clause. *See, e.g.,
Van Buskirk v. Wilkinson*, 216 F.2d 735, 738 (9th Cir. 1954); *Kell v. U.S. Parole Comm.*,
26 F.3d 1016, 1020 (10th Cir. 1994); *Cooks v. U.S. Bd. of Parole*, 447 F.2d 63, 65 (5th
Cir. 1971). Further, the United States Court of Appeals for the Ninth Circuit consistently

---

[3] It is unclear whether the state court addressed this claim on due process grounds.
Regardless, there is no case law supporting such a claim. Lower federal courts have rejected
forfeiture arguments on due process grounds. *See Hall v. Bostic*, 529 F.2d 990 (4th Cir. 1975)
(denial of credit for probation or parole time against a prison sentence does not violate due
process); *White v. Wyrick*, 432 F.Supp. 1316 (W.D. Mo. 1977) (refusal to count time spent on
parole when sentence is resumed does not violate due process). This claim fails as a federal
habeas corpus claim under either a de novo or an AEDPA standard of review.

has held that the Double Jeopardy Clause does not apply to parole revocation proceedings at all. *Dunn v. California Dep't of Corrections*, 401 F.2d 340, 342 (9th Cir.1968); *United States v. Clark*, 984 F.2d 319, 320 (9th Cir. 1993); *Moor v. Palmer*, 603 F.3d 658, 660 (9th Cir. 2010).

Therefore, the Court concludes that Petitioner's claims that he was unlawfully punished several times during the parole violation process, including his eventual re-incarceration and forfeiture of his time spent on parole, fail under all of Petitioner's legal theories because no United States Supreme Court case law exists to support his claims under § 2254(d)(1).

**2.     Claims 2 and 3**

Plaintiff contests three aspects of his parole revocation hearing: Claim 2, that his due process rights were violated when the Parole Commission failed to issue a written decision within twenty days of the hearing, as required by state statute, I.C. § 20-229B; Claim 3, that he had the due process right to cross-examine witnesses at the Parole Commission hearing; and Claim 4, that his due process rights were violated when the Parole Commission failed to record the proceeding for accuracy.

In *Morrissey v. Brewer*, 408 U.S. 471 (1972), the United States Supreme Court set forth "the minimum requirements of due process" for parole revocation proceedings:

They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate ... parole revocation to a criminal prosecution in any sense.

*Id*. at 480.

A.     *Claim 2: Twenty-Day Deadline*

As discussed above, Claim 1 is based on an Idaho administrative rule that requires the hearing officer to issue a decision within twenty days of the hearing. *Morrissey* does not include a twenty-day decision rule, nor is there another United States Supreme Court decision that so requires. Thus, under the § 2254(d)(1) standard for habeas corpus relief, Petitioner has not shown that his federal due process rights were violated when the hearing officer did not issue a decision within 20 days.

B.     *Claim 3: Cross-Examination of Witnesses*

The Idaho Court of Appeals addressed the merits of Petitioner's claim that he was not given adequate opportunity to cross-examine witnesses at his parole violation and revocation hearings:

Here, Matthews has at least raised a factual issue as to whether the Commission prohibited Matthews from cross-examining witnesses at the dispositional hearing. We conclude that this factual issue did not preclude summary judgment dismissing Matthews' claim, however, because even if the alleged due process violation occurred, it was harmless error in this case. Even constitutional errors, including deprivation of the right of cross-examination, may be harmless, not necessitating a remedy on appeal. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *State v. Green*, 136 Idaho 553, 557, 38 P.3d 132, 136 (Ct. App. 2001). Such is the case here. Both of the witnesses who testified at the dispositional hearing had previously testified at the factual parole violation hearing before the hearing officer, at which time Matthews was afforded the right to cross-examine them. The minutes of the two hearings do not reveal any marked difference in their testimony. More importantly, the minutes of the dispositional hearing also state that "the reasons of the Commission for revoking and denying parole are based solely on the findings of the hearing officer, not on testimony of any witness at this revocation hearing. Thus, the record establishes that Matthews was not prejudiced by the disallowance of cross-examination at the dispositional hearing. Even assuming that the Commission prohibited cross-examination (an action that we would not condone), because the Commission has stated that it did not rely upon the testimony that was sheltered from cross-examination, Matthews has not shown that the error infected the parole revocation decision, and hence has not shown that his current imprisonment is unlawful.

(State's Lodging B-4, pp. 9-10.)

*Morrissey* includes the requirement that the parolee have the right to confront and cross-examine adverse witnesses, unless the hearing officer specifically finds good cause for not allowing confrontation. This right arises from the Due Process Clause of the Fourteenth Amendment, rather than from the Sixth Amendment, because a parole

proceeding is not a criminal proceeding. *Valdivia v. Schwarzenegger*, 599 F.3d 984, 989 (9th Cir. 2010).

Here, nothing in the record shows that the hearing officer found there was good cause for not allowing Petitioner to confront his two ex-girlfriends, who were acting as witnesses for the State. (*See* State's Lodging A-1, p. 169.) Thus, the *Morrissey* exception does not apply, and the cross-examination should have been allowed. Taking the facts in a light most favorable to Petitioner, the Idaho Court of Appeals assumed that Petitioner unlawfully was prohibited from cross-examining witnesses, a Due Process Clause violation. The Court of Appeals then undertook a harmless error analysis, concluding that the error was not harmful, as described above.

The United States Court of Appeals for the Ninth Circuit has clarified that a federal habeas court reviewing a state court ruling of harmless error must review the state court decision in two steps: the federal district court first should determine whether the state court's harmless error application was objectively unreasonable or contrary to the reasoning or holdings of Supreme Court precedent, and, if it is, then the federal court "should engage in an independent harmless error analysis applying the standard articulated in *Brecht [v. Abrahamson*, 507 U.S. 619 (1993)]." *Inthavong v. LaMarque*, 420 F.3d 1055 (9th Cir. 2005); *see Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (*Brecht* is the proper harmless error standard to apply in § 2254 proceedings).

The harmless error standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), requires that a petitioner establish actual prejudice, or that the constitutional violation had a substantial and injurious effect or influence on the factfinder's decision. Thus, "[t]o grant relief where a state court has determined that a constitutional error was harmless, [the court] must both determine (1) that the state court's decision was 'contrary to' or an 'unreasonable application' of Supreme Court harmless error precedent, and (2) that the petitioner suffered prejudice under *Brecht* from constitutional error." *Inthavong*, 420 F.3d at 1059.

Here, Petitioner has not shown that the Idaho Court of Appeals' harmless error analysis was objectively unreasonable or contrary to the reasoning or holdings of United States Supreme Court precedent. Neither has Petitioner established actual prejudice under *Brecht*. Not only did Petitioner have the opportunity to previously cross-examine the two witnesses at the preliminary hearing (who gave substantially the same testimony), the Parole Commission clearly stated it was relying solely on the findings of the hearing officer, not on testimony of any witness at the revocation hearing. Accordingly, relief under § 2254 is not warranted.[4]

---

[4] Petitioner also mentions the Eighth Amendment as a legal basis for his cross-examination claim, which is a frivolous argument, because the failure to permit cross-examination is not punishment. This claim fails as a habeas corpus claim under either a de novo or an AEDPA standard of review.

C.    *Claim 4: Recording of Proceedings*

Claim 4 is that Petitioner had a due process right to have the hearings recorded for accuracy. *Morrissey* provides for relaxed standards for parole hearings, because they are not criminal adjudications, and it does not require that proceedings be recorded to meet the standards of Due Process. The Court is unaware of any case law supporting Petitioner's claim. Thus, under a de novo standard, Petitioner has not shown that his federal due process rights were violated when the parole hearings were not recorded.

3.    **Claim 5: Ineffective Assistance of Counsel**

Petitioner alleges that his counsel performed ineffectively during the state habeas corpus proceedings challenging the parole violation and revocation decisions of the Idaho Parole Commission. Particularly, Petitioner alleges: "If counsel hired by petitioner would have correctly argued these issues and contacted or accepted a phone call for the $5000 paid the issues presented would not [have] had to go into US District Court." (Dkt. 26, pp. 4-5). Petitioner alleges that counsel did not visit or contact Petitioner and did not pursue or preserve important issues for appeal, such as the "already sanctioned" issue. (Dkt. 38-1.)

The Constitution does not require the appointment of counsel in all parole revocation hearings, but, in the court's discretion, counsel can be appointed for a *parole revocation hearing* under special circumstances. *Gagnon v. Scarpelli*, 411 U.S. 778, 787

**MEMORANDUM DECISION AND ORDER - 37**

(1973). Here, Petitioner is not contesting his two counsels' performance at the revocation hearings, but, rather, his state habeas corpus counsel's performance. Because there is no constitutional right to counsel at such a proceeding, no ineffective assistance of counsel claim lies. *See Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993).

In any event, under *Strickland v. Washington*, 466 U.S. 668 (1984), where both deficient performance and prejudice must be shown, the above analysis of the merits of Petitioner's other claims shows that the outcome of his state habeas proceedings likely would not have been different had counsel performed differently and preserved the procedurally defaulted claims for appeal. Therefore, under a de novo standard, Petitioner's claim fails.

## CONCLUSION

Claims 1, 4, and 5 are procedurally defaulted, and no cause and prejudice can be shown from the record. Neither has Petitioner shown that he is actually innocent of each parole violation of which he was accused. All of Petitioner's claims, including Claims 2 and 3, fail on the merits under 28 U.S.C. § 2254(d) or de novo review. Accordingly, the Second Amended Petition for Writ of Habeas Corpus (Dkt. 26), and this entire action, will be dismissed with prejudice.

**MEMORANDUM DECISION AND ORDER - 38**

## REVIEW OF THE CLAIMS AND THE COURT'S DECISION
## FOR PURPOSES OF CERTIFICATE OF APPEALABILITY

In the event Petitioner files a notice of appeal from the Order and Judgment in this case, the Court now evaluates the claims within the Petition for suitability for issuance of a certificate of appealability (COA), which is required before a habeas corpus appeal can proceed. 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); Rule 11(a), Rules Governing Section 2254 Cases.

A COA will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that, under this standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.*"* *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and punctuation omitted).

When a court has dismissed a petition or claim on procedural grounds, in addition to showing that the petition "states a valid claim of the denial of a constitutional right," as explained above, the petitioner must also show that reasonable jurists would find debatable whether the court was correct in its procedural ruling. *Slack,* 529 U.S. at 484. When a court has dismissed the petition or claim on the merits, the petitioner must show

that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. The COA standard "requires an overview of the claims in the habeas petition and a general assessment of their merits," but a court need not determine that the petitioner would prevail on appeal. *Miller-El*, 537 U.S. at 336.

Here, the Court has dismissed some of Petitioner's claims on procedural grounds, and alternatively denied those, as well as all other, claims on the merits. The Court finds that additional briefing on the COA is not necessary. Having reviewed the record again, the Court concludes that reasonable jurists would not find debatable the Court's decision on the procedural issues and the merits of the claims raised in the Petition and that the issues presented are not adequate to deserve encouragement to proceed further. As a result, the Court declines to grant a COA on any issue or claim in this action.

If he wishes to proceed to the United States Court of Appeals for the Ninth Circuit, Petitioner must file a notice of appeal in this Court **within thirty (30) days after entry of this Order**, and he may file a motion for COA in the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b).

## ORDER

**IT IS ORDERED**:

1.  Respondent's Motion for Summary Dismissal (Dkt. 34) is GRANTED, and
    Petitioner's Motion Opposing Respondent's Motion for Summary Dismissal
    (Dkt. 38) is DENIED. This entire case is DISMISSED with prejudice.

2.  The Court will not grant a Certificate of Appealability in this case. If
    Petitioner chooses to file a notice of appeal, the Clerk of Court is ordered to
    forward a copy of this Order, the record in this case, and Petitioner's notice
    of appeal, to the United States Court of Appeals for the Ninth Circuit.



DATED: September 25, 2012

_____
Honorable Candy W. Dale
United States Magistrate Judge